UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| AMANDA L., | | |
| | Plaintiff, | **DECISION and ORDER** |
| v. | | |
| KILOLO KIJAKAZI,[1] Commissioner of Social Security, | | **21-CV-66F** (**consent**) |
| | Defendant. | |

_____

APPEARANCES:			LAW OFFICES OF KENNETH HILLER
				Attorneys for Plaintiff
				KENNETH R. HILLER and
				KELLY ELIZABETH LAGA-SCIANDRA of Counsel
				6000 North Bailey Avenue
				Suite 1A
				Amherst, New York  14226


				TRINI E. ROSS
				UNITED STATES ATTORNEY
				Attorney for Defendant
				Federal Centre
				138 Delaware Avenue
				Buffalo, New York  14202
					and
				ANDREEA LAURA LECHLEITNER
				Special Assistant United States Attorney, of Counsel
				Social Security Administration
				Office of General Counsel
				6401 Security Boulevard
				Baltimore, Maryland  21235

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On October 3, 2022, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order (Dkt. 10). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on December 9, 2021 (Dkt. 7), and by Defendant on December 14, 2021 (Dkt. 8).

**BACKGROUND**

Plaintiff Amanda L. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA") on August 13, 2018, for Social Security Disability Income ("SSDI") under Title II of the Act ("disability benefits"). Plaintiff alleges she became disabled on November 17, 2017, based on severe depression, post-traumatic stress disorder ("PTSD"), anxiety, back issues, and bipolar disorder. AR[2] at 12, 165-66, 186. Plaintiff's application initially was denied on December 12, 2018. AR at 12, 57-72. At Plaintiff's timely request, AR at 87-88, on May 7, 2020, an administrative hearing ("administrative hearing") was held via telephone before Administrative Law Judge ("ALJ") Michael J. Stacchini ("the ALJ"), located in White Plains, New York. AR at 30-56. Appearing and testifying by telephone at the administrative hearing were Plaintiff, represented by Leigh Walters, a non-attorney, and vocational expert Michael C. Dorsey ("the VE").

---

[2] References to "AR" are to the pages of the Administrative Record electronically filed by Defendant on July 12, 2021 (Dkt. 6).

2

On June 10, 2020, the ALJ issued a decision denying Plaintiff's claim, AR at 9-29 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 162-64.  On November 16, 2020, the Appeals Council adopted the ALJ's Decision that Plaintiff was not disabled, AR at 1-6, thus rendering the ALJ's Decision the Commissioner's final decision.  On January 14, 2021, Plaintiff commenced the instant action seeking review of the ALJ's Decision denying Plaintiff disability benefits.

On December 9, 2021, Plaintiff moved for judgment on the pleadings (Dkt. 7 ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 7-1) ("Plaintiff's Memorandum").  On December 14, 2021, Defendant moved for judgment on the pleadings (Dkt. 8) ("Defendant's Motion"), attaching Commissioner's Brief in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief (Dkt. 8-1) ("Defendant's Memorandum").  Filed on January 25, 2022, was Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff Amanda L. ("Plaintiff"), born January 7, 1984, was 33 years old as of her alleged disability onset date ("DOD") of November 17, 2017, and 36 years old as of June 10, 2020, the date of the ALJ's Decision.  AR at 12, 23, 165, 186.  Plaintiff lived

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

alone in an apartment and her two children, including a teenager and a toddler, lived with her mother.  AR at 38, 196-97.

Plaintiff attended regular classes in school, did not graduate high school, but obtained a GED in 2009, and has not completed any specialized training, trade, or vocational school.  AR at 187, 379.  Plaintiff has a driver's license and until shortly before the administrative hearing, regularly drove her mother's vehicle.  AR at 37-39, 199.  Plaintiff has past work experience as an accounting clerk, psychiatric aide, telephone representative/solicitor, purchasing clerk receptionist, data entry clerk, and county clerk, AR at 21-22, 50-51, 188, but last worked on November 17, 2017 because of her impairments.  AR at 187.

It is undisputed that in addition to mental health impairments, including PTSD, depression, anxiety, bipolar disorder, polysubstance abuse, and asthma, Plaintiff also suffers from irritable bowel syndrome ("IBS") and an overactive bladder.  At all times relevant, Plaintiff's primary care physician were Ritu Sood, M.D. ("Dr. Sood") at General Physician, PC, and Brandon J. Brownell, M.D. ("Dr. Brownell") at Southgate Medical Group, LLP ("Southgate Medical"), AR at 735-92.  Plaintiff treated for her IBS and overactive bladder at WNY Urology Associates ("WNY Urology") where she saw Anthony Riccottone, M.D. ("Dr. Riccottone"), AR at 506-35, and for her fatty liver at Southtowns Gastroenterology, PLLC ("Southtowns Gastroenterology") where she saw Albert Diaz-Ordaz, M.D. ("Dr. Diaz-Ordaz"), and nurse practitioner Elaine M. Lopez, FNP-BC ("NP Lopez").  AR at 413-38, 567-89, 793-837).  In connection with her disability benefits application, Plaintiff underwent both a consultative psychiatric evaluation by psychologist Janice Ippolito, Psy.D. ("Dr. Ippolito"), AR at 379-83, and an

internal medicine examination by Dulan Hailoo, M.D. ("Dr. Hailoo"). AR at 385-89. Plaintiff underwent further consultative evaluations including a psychiatric evaluation by psychologist Gregory Fabiano, Ph.D. ("Dr. Fabiano"), on October 16, 2018, AR at 496-500, and AR at 496-500, and an internal medicine examination by Nikita Dave, M.D. ("Dr. Dave"), on November 2, 2019. AR at 502-05.

## DISCUSSION

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather,

"the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

**2.    Disability Determination**

Although Plaintiff seeks only SSDI benefits, the definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v.*

*Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

**3.      Analysis of Plaintiff's Arguments**

In the instant case, the ALJ found Plaintiff meets the insured status requirements for SSDI though December 31, 2022, AR at 14, did not engage in substantial gainful activity ("SGA") since November 17, 2017, Plaintiff's alleged disability onset date, *id*.,[5] and suffers from the severe impairments of PTSD, depression, anxiety, bipolar disorder, polysubstance abuse, asthma, irritable bowel syndrome, and overactive bladder, *id*. at 15, but that other conditions alleged by Plaintiff are not severe impairments including a fatty liver, anemia, migraines, and obesity.  *Id*. at 15.  The ALJ also found Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 15-17.  Despite her impairments, the ALJ found Plaintiff retains the RFC to perform a full range of work at all exertional levels with certain nonexertional limitations including she must avoid concentrated exposure to atmospheric conditions and be permitted ready access to a bathroom permitting her to be off task for up to 5% of the work day in addition to regularly scheduled breaks of 15 minutes in the morning and afternoon, and one half hour to an hour at midday, and that Plaintiff can understand remember and carry out simple routine tasks with regularly scheduled breaks at 2 hour intervals, with

---

[5] The court notes that, as the ALJ found, AR at 14, Plaintiff's limited income earned after her asserted DOD did not amount to SGA.

decision making and changes in work setting limited to those related to simple routine tasks with occasional interaction with the general public, coworkers, and supervisors. *Id*. at 17-21. The ALJ further found Plaintiff is incapable of performing her PRW, *id*. at 21-22, but that based on Plaintiff's age on the alleged DOD of 33, and given Plaintiff's RFC, education, and ability to communicate in English, with transferability of skills irrelevant to the disability determination, there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing including as a garment bagger, linen room attendant, and industrial cleaner. *Id*. at 22-23. Accordingly, the ALJ found Plaintiff was not disabled, as defined in the Act through the date of the ALJ's Decision. *Id*. at 23.

Plaintiff sole challenge to the ALJ's Decision is limited to the ALJ's determination that Plaintiff's need to use the bathroom outside of regularly scheduled breaks would cause her to be off-task for 5% of the workday is not based on medical evidence in the record such that the determination was the product of the ALJ's improper surmise. Plaintiff's Memorandum at 10-18. In opposition, Defendant argues Plaintiff has failed to meet her burden of proving she requires more than regularly scheduled breaks such that the ALJ's determination restricting Plaintiff to work that permitted Plaintiff to be off-task for 5% of the time in excess of regularly scheduled breaks both comports with the regulations and is supported by substantial evidence in the record. Defendant's Memorandum at 7-16. In reply, Plaintiff essentially reiterates the arguments made in Plaintiff's Memorandum. Plaintiff's Reply at 1-4.

Plaintiff's RFC formulated by the ALJ included a determination that Plaintiff "be permitted ready access to a bathroom permitting her to be off task for up to 5% of the

work day in addition to regularly scheduled breaks. . . ." AR at 17. In arguing that the ALJ did not properly evaluate Plaintiff's off-task limitation in formulating Plaintiff's RFC, Plaintiff asserts the ALJ's specific determination that Plaintiff would be off-task for 5% of the workday is not supported by any evidence in the record regarding unscheduled bathroom breaks. Plaintiff's Memorandum at 10-18. According to Plaintiff, the ALJ's failure to "tether" the "highly specific" 5% off-task limitation to any particular evidence in the record establishes the ALJ arbitrarily relied on mere "surmise" which is harmful error insofar as Plaintiff's condition may have required she be off-task for more than 5% of the workday which would preclude all employment. *Id*. In contrast, Defendant relies on caselaw in which the Second Circuit Court of Appeals and this court rejected as unacceptable lay opinion the ALJ's inclusion in the RFC of a particular percentage or range of the workday in which the claimant would be off task where such determination was not also found in a medical opinion. Defendant's Memorandum at 14-16 (citing cases).

"*Specific* RFC assessments must be based on evidence in the record, not on an 'ALJ's own surmise.'" *Elder v. Comm'r of Soc. Sec.*, 2019 WL 6320355, at * 5 (W.D.N.Y. Nov. 26, 2019) ("*Elder*") (italics added) (quoting *Cosnyka v. Colvin*, 576 Fed.Appx. 43, 46 (2d Cir. 2014) ("*Cosnyka*")). Relevantly, in *Cosnyka*, the Second Circuit rejected the ALJ's specific determination that the claimant would be off-task for "comfort breaks" for six minutes of each hour which was not supported by any evidence in the record and, thus, was based only on the ALJ's own surmise. *Cosnyka*, 576 Fed.Appx. at 46. In contrast, in *Johnson v. Colvin*, 669 Fed.Appx. 44 (2d Cir. 2016) ("*Johnson*"), on which Defendant relies, Defendant's Memorandum at 14, the Second

Circuit affirmed the ALJ's assigning "a *particular percentage range* (0-10%) to illustrate [the plaintiff's] limitation" and distinguished the assignment of a limitation range from cases where the Second Circuit "rejected highly specific findings that were unsupported from the record . . . ." *Johnson*, 669 Fed.Appx. at 47 (italics added) (citing cases including *Cosnyka*, 576 Fed.Appx. at 46)).  *See also James G. v. Comm'r of Soc. Sec.*, 2022 WL 2180158, at * 7 (W.D.N.Y. June 16, 2022) ("*James G.*") (affirming the ALJ's determination that the plaintiff was not disabled where the 5% off-task limitation assigned by the ALJ was not unsupported by any evidence showing a greater off-task percentage of time should have been used because "the ALJ carefully crafted the RFC so that it does not specifically require the off-task time, but rather, allows such off-task time," which was "further highlighted by the question posed to the VE, *i.e.*, not that Plaintiff *will* be off task 5% of the workday but rather whether such jobs would *allow* Plaintiff to be off task 5% of the day.").  Consistent with the relevant caselaw, here, the court construes the the ALJ's determination that Plaintiff could work a job "permitting her to be off-task for *up to 5%* of the work day," AR at 17 (italics added), as allowing, but not requiring, Plaintiff to be off-task for a particular range of time, *i.e.*, 0-5% of the work day, rather than for a specific amount of time.

      Nor is remand required by the fact that the ALJ's determination that Plaintiff could perform a job that permitted her to be off-task for up to 5% of the work day is not "tethered" to any medical evidence in the record, as Plaintiff argues.  Plaintiff's Memorandum at 11-17.  Such argument ignores that Plaintiff bears the burden of establishing her RFC is more restrictive than the ALJ's determination.  *See Smith v. Berryhill*, 740 Fed.Appx. 721, 726 (2d Cir. 2018) (denying remand where the plaintiff

11

failed to meet his burden to prove a more restrictive RFC than assessed by the ALJ) (citing 42 U.S.C § 423(d)(5)); *Michael P. V. Commissioner of Soc. Sec.*, 2023 WL 21228, at * 7 (W.D.N.Y. Jan. 3, 2023) (declining to remand and granting the commissioner's motion for judgment on the pleadings where the plaintiff presented no evidence of functional limitations greater than those found by the ALJ). Here, that the ALJ's determination that Plaintiff could work a job in which she was allowed to be off task for up to 5% of the workday is not "tethered" to any particular medical evidence in the records, in the absence of any evidence in the record suggesting Plaintiff would be off task more than 5% of the work day, establishes only that the ALJ's finding is more restrictive than the medical record supports such that even if incorrect, the ALJ's RFC determination is merely harmless error. *See Ellen A. v. Saul*, 2021 WL 1087949, at * 4 (W.D.N.Y. Mar. 22, 2021) (ALJ's determination that Plaintiff's RFC was more restrictive than what was supported by the medical evidence in the record was favorable to the plaintiff and thus was harmless error).

Even where, as here, the ALJ's RFC determination does not directly correspond to any medical opinion in the record, the RFC determination will be upheld so long as it is supported by the Plaintiff's daily activities, treatment history, and consultative examiner's evaluations. *See Wilson v. Colvin*, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("Furthermore, the fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up'"); *Kirkland v. Colvin*, 2016 WL 850909, at * 12 (W.D.N.Y. Mar. 4, 2016) (finding that the ALJ did not err by assessing specific limitations that did not precisely correspond to any medical opinion because the plaintiff's daily activities, treatment

history, and consultative examiner's evaluation supported those limitations).  In the instant case, the ALJ relied on Plaintiff's reported activities of daily living which included caring for her daily needs, maintaining good hygiene, performing household chores, and socializing.  AR at 16, 19-20.  Significantly, Plaintiff testified at the administrative hearing that she prepared simple meals, cleaned including dusting and vacuuming, and did her own laundry.  AR at 40.  Although Plaintiff's children were living with her parents, Plaintiff testified she had legal custody of her children, and that Plaintiff frequently visited the children at her mother's house, *id*. at 40-41, 200, during which Plaintiff took the younger child for walks.  Plaintiff's best friend had recently relocated to California, but Plaintiff maintained regular contact with her by telephone and social media and socialized with another girlfriend.  *Id*. at 41.  On October 16, 2018, Plaintiff reported to Dr. Ippolito that she cooks, does laundry, grocery shops, tends to her personal grooming and hygiene, manages money, drives, uses public transportation, regularly interacts with friends, attends medical appointment, and visits with her parents and children.  AR at 382.  On November 2, 2019, Plaintiff reported to Dr. Fabiano that she drove by herself 25 miles to the appointment, AR at 496, lived alone, *id*., was able to attend to her personal grooming and hygiene, *id*. at 499, do laundry, manage money, maintained family relationships, and spent her days "just hanging out with my daughter." *Id*.  The ALJ was permitted to rely on such activities in formulating Plaintiff's RFC.  *See Lora v. Colvin*, 2017 WL 4339479, at * 5 (S.D.N.Y. Sept. 12, 2017) (upholding ALJ's finding plaintiff was not disabled where plaintiff's testimony of regularly attending school, daily performing routine self-care activities, and socializing with friends was inconsistent with a finding of disability).

With regard to treatment records, the ALJ considered that Plaintiff's medical records from Southtowns Gastroenterology show Plaintiff was treated for a fatty liver and was noted to have irritable bowel syndrome and an anal fissure for which Plaintiff was prescribed medication, but that treatment notes dated September 2018, March 2019, and September 2019 reported that Plaintiff denied abdominal pain, was able to perform her usual activities of daily living and had a good appetite.  AR at 18 (citing AR at 578-81, 582-85, 816-19).  Plaintiff's treatment records from WNY Urology showed Plaintiff was followed for an overactive bladder for which she was treated with medications and underwent a cystoscopy with Botox injections, AR at 19 (citing AR at 506-566), to which Plaintiff on June 15, 2018 had "very good response" AR at 522, asserting in follow up that she was "doing significantly better," AR at 521-22, reported on October 3, 2018 her urination frequency and urgency were "greatly" improved, AR at 524, and on August 6, 2019, when Plaintiff again sought a Botox treatment for her urination issues, she noticed a "vast improvement."  AR at 525.

The ALJ also relied on the consultative opinions of Dr. Hailoo and Dr. Dave.  Defendant's Memorandum at 9-11.  Although aware of Plaintiff's history of an overactive bladder, AR at 385, Dr. Hailoo did not ascribe any limitations to the condition, but assessed a mild limitation to heavy living, carrying, bending, and prolonged standing, walking, and sitting.  AR at 388.  Dr. Dave was similarly aware of Plaintiff's overactive bladder, as well as irritable bowel syndrome, AR at 504-05, yet opined with respect to such conditions that Plaintiff would need work that would "[a]llow for frequent restroom break intervals due to bladder and bowels."  AR at 505.  These consultative reports are consistent with the treatment notes in the administrative record, and the ALJ is

14

permitted to rely on the opinion of a consultative examiner provided the opinion is supported by and consistent with other evidence in the record. *See Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) (consultative physician's report may constitute substantial evidence). In sum, neither evidence of Plaintiff's daily living activities, treatment notes, nor the consultative opinions support any need for work breaks in excess of 5% to accommodate Plaintiff's heightened need for urination and bowel movements during a workday.

Accordingly, the ALJ's determination that Plaintiff could perform the full range of work at all exertional levels with some non-exertional limitations relative to Plaintiff's overactive bladder and irritable bowel syndrome as well as some mental impairments not challenged here is supported by substantial evidence in the record.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 7) is DENIED; Defendant's Motion (Dkt. 8) is GRANTED. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   January 10th, 2023
         Buffalo, New York